IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-13-1492 |
| | § | CRIMINAL ACTION NO. H-10-554 |
| MANUAL LOPEZ VILLEDA, | § | |
| | § | |
| Defendant/§ 2255 Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this proceeding under 28 U.S.C. § 2255, is the United States'
Response and Motion to Dismiss (Document Nos. 49 & 50) Manuel Lopez Villeda's § 2255 Motion
to Vacate, Set Aside or Correct Sentence (Document No. 40).  Having considered the Government's
Response and Motion to Dismiss, Villeda's § 2255 Motion, the affidavit of Villeda's counsel
(Document No. 46), the contents of which Villeda has not directly contested, the record of the
proceedings before the District Court in the underlying criminal case and on appeal, and the
applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the
Government's Motion to Dismiss be GRANTED, that Villeda's §  2255 Motions to Vacate, Set
Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED with
prejudice.

I.      **Procedural History**

Movant Manuel Lopez Villeda ("Villeda"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Villeda's first attempt at relief under § 2255.

On August 11, 2010, Villeda charged by Indictment with illegal re-entry into the United States following deportation, in violation of 8 U.S.C. § 1326(a), (b)(1) (Document No. 1).   On October 1, 2010, Villeda pled guilty without a plea agreement.  (Document No. 15).  A presentence investigation report (PSR) was then prepared, to which no objections were  filed.  *See* Statements of No Objections (Document Nos. 17 & 20).   On January 7, 2011, Villeda was sentenced to 54 months confinement, to be followed by a three year term of supervised release.  (Document No. 23). Judgment was entered on January 11, 2011.  (Document No. 25).

Villeda appealed, but his appeal was dismissed on February 17, 2012, as frivolous, based on appellate counsel's *Anders* brief.  (Document No.  39).  This § 2255 proceeding, filed on or about May 20, 2013, followed.  (Document No. 40).   The Government has filed a Response and a Motion to Dismiss, to which Villeda has not, as of this date, filed a response in opposition.  In addition, the record has been expanded to allow for consideration of the affidavit of Villeda's trial counsel (Document Nos. 45 & 46).   Although Villeda was given twenty-one days to admit or deny the correctness of counsel's affidavit, he has not, to this date, done so.

## II.     Claims

Villeda raises six ineffectiveness claims in his § 2255 motion:

1.      that trial counsel was ineffective for inducing him to plead guilty with promises of a lenient 24 month sentence;

2.      that trial counsel was ineffective for failing to properly challenge the aggravated felony enhancement under § 2L1.2(b)(1)(B) of the United States Sentencing Guidelines;

3.      that appellate counsel was ineffective for failing to challenge the imposition of the aggravated felony enhancement under § 2L1.2(b)(1)(B) of the Sentencing Guidelines;

4.      that trial counsel was ineffective for failing to object to the District Court's failure to state in open court the reasons for the sentence imposed, as required by 18 U.S.C. § 3553;

5.      that appellate counsel was ineffective for failing to complain, on appeal, about the District Court's failure to state in open court the reasons for the sentence imposed; and

6.      that appellate counsel was ineffective for failing to provide Villeda with the court record so that Villeda could respond to appellate counsel's *Anders* brief.

In its Response and Motion to Dismiss, the Government argues that no relief is available on any of Villeda's ineffectiveness claims.

## III.    Discussion

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id*. at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a

presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland's* deficient performance prong, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). Moreover, the reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct, not in hindsight. *Strickland*, 466 U.S. at 690-691. Under *Strickland's* prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

In a guilty plea context, where trial counsel's ineffectiveness is claimed to have resulted in an unknowing and involuntary guilty plea, the two part *Strickland* test is applied somewhat differently. In *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985), the Supreme Court held that challenges to guilty pleas on ineffective assistance of counsel grounds warrant relief only if it can be shown that counsel's representation fell below an objective standard of reasonableness, and that, but for

counsel's errors, the defendant would have forgone a guilty plea and would have insisted upon a trial. *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) ("In the context of a guilty plea, a defendant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'"), *cert. denied*, 516 U.S. 1133 (1996); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) ("[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error"), *cert. denied*, 514 U.S. 1071 (1995).

In the appellate context, ineffectiveness claims are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). But, with respect to *Strickland's* deficient performance prong, "effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Instead, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success," *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001)., for "[i]t is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S.

5

259, 288 (2000)).  As for *Strickland's* prejudice prong, prejudice is established in an appellate context if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

A.    **Guilty Plea Claim**

In his first claim, Villeda maintains that he wanted to challenge the illegal re-entry charge at trial, but his trial counsel, J.A. Salinas, convinced him to plead guilty with representations "that he would receive no more than 24 months in prison."  § 2255 Motion (Document No. 40) at 11.  Villeda also states in an Declaration he filed and attached to his § 2255 Motion that "acting on Mr. Salinas['] assurances of a 24 month sentence, I changed my plea to guilty." (Document No. 40-1 at 3).

Against Villeda's allegations and affidavit statements is the affidavit of Villeda's trial counsel, J.A. Salinas, who states: "Mr. Lopez Villeda knowingly and voluntarily decided to enter a guilty plea after numerous discussions concerning his options of entering a plea versus going to trial and the sentencing guidelines.  I did not assure Mr. Lopez Villeda of a 24 month sentence." Affidavit of J.A. Salinas (Document No. 46) at 4.  Villeda has not, to this date, admitted or denied the correctness of Salinas's affidavit.  In addition, Villeda has not offered any proof that his statements on the record at his Rearraignment as to the knowing and voluntary nature of his guilty plea were not true.

At his Rearrignment, Villeda was questioned by the District Court, *at length*, about his understanding of the charges, the rights he would be giving up by pleading guilty, and the consequences associated with his guilty plea, including his sentencing exposure:

THE COURT:  Is there any reason that you can think of why you would not be able to understand what is happening here today?

THE DEFENDANT:  No.

THE COURT:  And have you been able to confer with your lawyer again this morning before this hearing began?

THE DEFENDANT:  No.

THE COURT:  Would you like to have any further discussion with him now before we proceed further?

THE DEFENDANT:  No.  It's fine.  I talked to him about two days ago.

THE COURT:  Okay.  Now, have you received a copy of the indictment pending against you, that is, the written charge filed against you in this case?

THE DEFENDANT:  Yes.

THE COURT:  And has it been read to you in Spanish?

THE DEFENDANT:  Yes.

THE COURT:  Have you talked about it with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  And have you gone over the case in general with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  About how many times have you had opportunity to talk with your lawyer about this case?

THE DEFENDANT:  About three times.

THE COURT:  And are you fully satisfied with the representation and counsel and the advice given to you by your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  I've been told that you intend to plead guilty, and I want to ask whether anyone has made any kind of promise or assurance of any [kind] in order to persuade you or induce you to plead guilty in this case?

THE DEFENDANT:  No.

THE COURT:  Has the government or anybody else coerced you or threatened you or in any way attempted to force you to plead guilty in this case?

THE DEFENDANT:  No.

THE COURT:  Do you understand that the offense to which you're proposing to plead guilty is a felony offense, and that if your plea is accepted, you will be adjudged guilty of that offense, and that such adjudication may deprive you of valuable civil rights, such as the right to vote, right to hold public office, the right to serve on a jury, right to possess any kind of firearms, and if you're not a citizen of the United States could adversely affect your immigration status in the United States.

Do you understand that those are all probable consequences of pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  Have you talked with your lawyer about what the maximum penalties are for the offense charged against you in Court 1 of the Indictment?

THE DEFENDANT:  Yes.

THE COURT:  Let me go over this with you also.  You're charged in this indictment with being an illegal alien who had been excluded or deported from the United States after having been convicted of a felony, and later being found back here in the United States without having obtained consent of the Attorney General or Secretary of Homeland Security to reapply for admission.  This offense carries with it a maximum term of 10 years in prison, a fine not to exceed $250,000, a term of more than three years of supervised release, and a special assessment of $100.  Has all that been explained to you?

THE DEFENDANT:  Yes.

* * *

8

THE COURT:  Do you see, then, what the consequences could be to determine what the maximum sentence would be if you enter a plea of guilty in this case?

THE DEFENDANT:  Yes.

THE COURT:  Now, have you talked with your lawyer about how the United States Sentencing  Commission Guidelines may apply to the sentence in your case?

THE DEFENDANT:  Yes.

THE COURT:  And you understand that the sentencing guidelines are advisory, they're not mandatory, and therefore the Judge may impose a sentence that is more severe or that is less severe than what is called for by the guidelines?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that under some circumstances, either you or the government would have the right to appeal to a higher court any sentence that I impose?

THE DEFENDANT:  Yes.

THE COURT: Now, you have a right to plead not guilty.  If you plead not guilty and persist in that plea, then you'll have the right to trial by jury during which you would also have the right to assistance of counsel to your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to come to court and testify in your defense.

Do you understand that under our system, you would have all of those rights if you pled not guilty?

THE DEFENDANT:  Yes.

THE COURT:  But by entering a plea of guilty, if I accept your plea, then there will be no trial, and you will have waived and given up your right to trial, as well as all of those other rights associated with a trial that I just described to you.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Now, let me explain to you the essential elements of the offense that you're charged with.  You're charged with illegally reentering the United States after

conviction for a felony. Before a jury could convict you of this offense, the government would have to prove each of the following beyond a reasonable doubt:

One, that you were an alien at the time they issued an indictment; two, that you had previously been excluded, removed or deported from the United States after your conviction for the commission of a felony; three, that thereafter you knowingly entered or were found in the United States; and, four, that you had not received the consent of the Attorney General of the United States or the Secretary of Homeland Security to apply for readmission to the United States after the time of your previous deportation, exclusion or removal.

Do you understand that those are the elements of the offense charged against you in Count 1 of the indictment?

THE DEFENDANT: Yes.

THE COURT: I'm going to ask the government lawyer to state what facts the government is prepared to prove if you choose to plead not guilty. I want you to listen to what he has to say, and then I'm going to ask you about these things while you're still under oath.
Mr. Donnelly.

MR. DONNELLY: Yes, Your Honor. If this case were tried, the United States would prove the defendant is a citizen of Mexico and not of the United States.

On September 19, 2008, defendant was convicted in the Third District Court of Salt Lake County Utah for the offense of attempted distribute, [offer], arrange to distribute a controlled substance in Cause Number 081901854FS. He was sentenced to an indeterminate sentence not to exceed five years' confinement, probated for 36 months.

On May 29, 2009, his probation was revoked and he was sentenced to 180 days' confinement.

On November 12, 2009, defendant was deported to Mexico.

On July 14, 2010, defendant was found in the United States at Houston, Texas.

A record search of the Central Index System and the defendant's A-file, revealed no evidence that the defendant obtained consent from the Attorney General of the United States of from the Secretary of the Department of Homeland Security to reapply for admission into the United States.

A fingerprint analyst examined and compared the fingerprints on the warrant of deportation and conviction documents to the known fingerprints of the defendant and concluded they were made by the same individual.

THE COURT: All right. You've heard what Mr. Donnelly has said. Are those facts true?

THE DEFENDANT: Yes.

THE COURT:  You were convicted of a - - out in Salt Lake City of attempted distribution or offering or arranging to distribute a controlled substance and sentenced to a sentence not to exceed five years' confinement that was probated?

THE DEFENDANT:  Yes.

THE COURT:  What was that controlled substance?

THE DEFENDANT:  It was crack cocaine.

THE COURT:  And then you were deported after you were released from prison?

THE DEFENDANT:  Yes.  I lost my papers because of that felony.

THE COURT:  And then you were deported back to Mexico?

THE DEFENDANT:  Yes.

THE COURT:  And then you were found here in the United States in July of this year in Houston, Texas?

THE DEFENDANT:  Yes.

THE COURT:  Did you have permission of the Attorney General of the United States or the Secretary of Homeland Security to reapply for admission into this country?

THE DEFENDANT:  No.

THE COURT:  And during all of this period of time, what has been your citizenship?

THE DEFENDANT:  Mexican.

THE COURT:  Is there any other advice I need to give the defendant under Rule 11 Mr. Salinas?

MR. SALINAS:  No, Your Honor.

THE COURT:  Do you know any reason why he would not be competent to enter a knowing and voluntary plea?

MR. SALINAS:  No, Your Honor.  I visited with him on Wednesday evening and we talked to his family and, they of course conferred with me, and so there's no reason.

THE COURT:  I'll ask you, Mr. Lopez-Villeda, how do you plead to the charge set forth against you in Court 1 of the indictment, guilty or not guilty?

THE DEFENDANT:  Guilty.

Rearraignment Transcript (Document No. 32) at 6-15.  Following that questioning, the District Court determined that Villeda's guilty plea was knowing and voluntary.  *Id.* at 15.  Villeda has not offered any evidence in this § 2255 proceeding that calls into question the District Court's determination. In addition, Villeda has not offered any evidence that he would have foregone a guilty plea, and the three- point reduction for acceptance of responsibility he ultimately received, if he had known that he could have been sentenced to more than 24 months confinement.  As such, his first claim – that his trial counsel's advice led to an unknowing and involuntary plea – merits no relief under either *Strickland* or *Hill*.

### B.    Trial Counsel Sentencing Claims

Villeda next claims that his trial counsel was ineffective for: (1) failing to challenge the 12 point sentencing enhancement he was assessed under U.S.S.G. § 2L1.2(b)(1)(B) for his prior felony drug conviction in Utah, for which he only served 180 days in jail (claim 2), and (2)  failing to object to the Court's failure to state, on the record, the reasons for its sentencing decision (claim 4).  With respect to the sentencing enhancement under § 2L1.2(b)(1)(B), Villeda maintains that counsel did not know the law, including *Lopez v. Gonzales*, 549 U.S. 47 (2006), which would have supported an objection to the 12 point enhancement.  As for the Court's failure to state the reasons for its sentencing decision on the record, Villeda argues that 18 U.S.C. § 3553(c) requires the Court to state its sentencing reasons on the record and counsel should have objected to the Court's failure to do so.

U.S.S.G. § 2L1.2(b)(1)(B) calls for twelve (12) levels to be added to a defendant's base offense level for the offense of unlawfully entering or remaining in the United States if "the defendant was previously deported, or unlawfully remained in the United States after – a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less."  An offense is a "drug trafficking offense" for purposes of § 2L1.2(b)(1)(A), (B)  if it is "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." § 2L1.2, Application Note 1(B)(iv) (Nov. 1, 2010).  The term "felony" in § 2B1.2 means "any federal, state, or local offense punishable by imprisonment for a term exceeding one year."  § 2L1.2, Application Note 2.

Here, both the documents included with the PSR and Villeda's own testimony at his Rearraignment show that Villeda had a prior *felony* conviction in Utah for attempted distribution of a controlled substance (crack cocaine).  That offense, as shown by the documents included with the PSR, was a third degree felony and was based on Villeda's offer to sell narcotics to an undercover officer.  Villeda admitted the basis of that offense at his Rearraignment.  Rearraignment Transcript (Document No. 32) at 13-14.  The documentary evidence of that prior felony offense also shows that Villeda was initially sentenced to an  indeterminate term of up to five years imprisonment, that the sentence was probated, that his probation was revoked shortly thereafter, and that he served 180 days in jail.  Because the documents included with the PSR, as well as Villeda's own admissions at his Rearraignment, show that Villeda had, prior to his deportation, a felony conviction for a drug trafficking offense, for which the sentence imposed was less than 13 months, the twelve level

increase under § 2L1.2(b)(1)(B) was warranted, and counsel had no reasonable basis for objecting thereto.  While Villeda argues that counsel should have based an objection to the application of § 2L1.2(b)(1)(B) on the Supreme Court's decisions in *Lopez v. Gonzales*, 549 U.S. 47 (2006) and *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), he makes no showing that either case applies to the facts of his case.  In *Lopez*, the Supreme Court held that a state conviction for simple possession of a controlled substance, which would not qualify as a felony under the Controlled Substances Act, was not an "aggravated felony."  *Lopez*, 549 U.S. at 60.  Similarly, in *Carachuri-Rosendo*, the Supreme Court held that a second state offense for simple drug possession is not an aggravated felony if that conviction "has not been enhanced based on the fact of a prior conviction."  *Carachuri-Rosendo*, 130 S.Ct. at 2589 (2010).  Neither *Lopez* nor *Carachuri-Rosendo*, both of which dealt with the term "aggravated felony," provided counsel in this case with a basis for challenging the application of § 2L1.2(b)(1)(B), which provides for a twelve level increase in a defendant's base offense level based on a conviction for a *"felony drug trafficking offense*."  Here, the term "aggravated felony" and the application of § 2L1.2(b)(1)(C) was simply not at issue. Villeda has therefore not made a showing, or even come forth with any allegations that would support a showing, that counsel's performance related to the application of § 2L1.2(b)(1)(B) was unreasonable.  This ineffectiveness claim fails under *Strickland's* deficiency prong.

As for Villeda's complaints about the Court's failure to state its reasons for the sentence imposed, as required by § 3553(c), Villeda ignores the fact that no objections were made to the PSR (Document Nos. 17 & 20), and the Court based Villeda's sentence on the facts contained in the PSR. *See* Sentencing Transcript (Document No. 34) at 4, 9.  Where there is no dispute about the proper application of the Sentencing Guidelines, the Court can rely on the Guidelines for determining a

proper sentence and generally "need say no more."  *Rita v. United States*, 551 U.S. 338, 357 (2007); *see also United States v. Reyes-Lugo*, 238 F.3d 305, 310 (5th Cir. 2001) ("Section 3553(c) requires that the district judge state in open court its reasons for imposing a particular sentence, but that requirement is satisfied when the court indicates the applicable guideline range and how it is chosen.").  Counsel had no basis for objecting under § 3553(c), and this claim also fails under *Strickland's* deficiency prong.

### C.    Appellate Counsel Claims

With respect to appellate counsel's performance, Villeda again complains about the failure of appellate counsel to object to the twelve level increase under § 2L1.2(b)(1)(B) (claim 3), and the Court's failure to state its reasons on the record for the sentence imposed (claim 5).  For the same reasons sets forth above, however, there was no viable basis for challenging the applicability of § 2L1.2(b)(1)(2) or the Court's compliance with § 3553(c).  Finally, while Villeda complains that his trial counsel failed to send him the appellate record so that he could file a response to counsel's *Anders* brief (claim 6), Villeda has not shown which documents he needed, but were not provided to him by appellate counsel, and has not shown how the outcome of his appeal would have been any different.  This appellate counsel ineffectiveness claim fails under *Strickland's* prejudice prong, and fails because it is conclusory.

### IV.    Conclusion and Recommendation

In all, based on the District Court's conclusion that Villeda's guilty plea was knowing and voluntary, and the record evidence that fully supports that conclusion, as well as the determination

that no relief is available to Villeda on any of his ineffective assistance of trial and appellate counsel claims, the Magistrate Judge

RECOMMENDS that the United States' Motion to Dismiss (Document No. 50) be GRANTED, that Movant Manuel Lopez Villeda's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 40) be DENIED, and that this § 2255 proceeding be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 23rd  day of January, 2014.


Frances H. Stacy
United States Magistrate Judge

16